IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY DIVISION

TONY TAYLOR,

   Petitioner,

v.          Case No. 5:18-cv-01071

D.L. YOUNG, Warden

   Respondent.

## PROPOSED FINDINGS AND RECOMMENDATIONS

On June 22, 2018, Petitioner Tony Taylor ("Petitioner"), proceeding *pro se*, filed a Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241, challenging the constitutionality of a prison disciplinary hearing. (ECF No. 1). This matter is assigned to the Honorable Frank W. Volk, United States District Judge, and by Standing Order has been referred to the undersigned United States Magistrate Judge for the submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). Given that the disciplinary hearing conducted by the prison complied with the constitutionally mandated due process requirements, the undersigned respectfully **RECOMMENDS** that the presiding District Judge **GRANT** Respondent's request for dismissal, construed as a Motion for Summary Judgment, (ECF No. 9); **DISMISS** the Petition for a Writ of Habeas Corpus, (ECF No. 1), and remove this matter from the docket of the Court.

## I.    Relevant Procedural History

Petitioner initiated this habeas proceeding during a period of incarceration at Federal Correctional Institution ("FCI") Beckley, located in Beaver, West Virginia. (ECF No. 1). On September 30, 2010, a jury sitting in the Eastern District of Kentucky found Petitioner guilty of various crimes involving the manufacture, distribution, and possession, of methamphetamine and other illegal substances, as well as unlawfully possessing a firearm while being a convicted felon. *See  United States v. Taylor,* Case No. 6:09-cr-00043-GFVT-EBA-1 (E.D. Ky. June 25, 2009) at ECF No. 166. On March 14, 2011, Petitioner was sentenced by the United States District Court for the Eastern District of Kentucky to a total term of 360 months imprisonment. *Id.* at ECF No. 180.

On September 30, 2017, while incarcerated in Federal Medical Center ("FMC") Lexington in Lexington, Kentucky, Petitioner received an Incident Report prepared by members of the FMC Lexington Unit Discipline Committee ("UDC"). (ECF No. 9-1 at 5). The Incident Report stated that on September 18, 2017, a Special Investigative Services ("SIS") investigation had concluded and determined that Petitioner had assaulted a fellow inmate. (*Id.*).

In laying out the factual basis for this determination, the Incident Report detailed that on September 5, 2017, a correctional officer working in the Health Care Housing Unit radioed requesting assistance for a medical emergency. Responding staff found an injured inmate, (hereinafter referred to as "the victim"), located near a staircase in the Unit. (*Id.*). When prison staff questioned the victim as to the cause of his injuries, he stated that he had fallen down the stairs. However, prison staff conducted a medical examination and concluded that the victim's injuries, which consisted of multiple contusions to the back of his head, a torn right ear, laceration on the middle finger, and swelling to the right wrist,

2

were not consistent with a fall. (*Id.*). Upon further questioning, the victim admitted to prison staff that he had been assaulted by another inmate. Medical Staff at the prison found that the victim's injuries were severe enough to require further treatment at a local hospital. (ECF No. 9-1 at 5).

When SIS staff subsequently interviewed the victim, he disclosed that Petitioner perpetrated the attack. The victim explained that he had agreed to complete some ceramic work for Petitioner. When the victim informed Petitioner that it would be necessary to purchase more supplies in order to finish the job, Petitioner became irate and expressed his unwillingness to buy more supplies. Petitioner later approached the victim from behind, struck him several times on the back of the head and upper torso, and then pushed him down the stairs. (*Id.*).

On September 12, 2017, Petitioner was questioned concerning the attack, and he denied arguing with, or assaulting, the victim. (*Id.* at 6). A medical assessment of Petitioner revealed a small abrasion on his hand. On September 18, 2017, the victim was again interviewed by SIS staff and was presented with a photo line-up of inmates who were assigned to the Health Care Housing Unit and were in the area at the time of the attack. The victim identified Petitioner as his assailant. (*Id.*). On October 5, 2017, the UDC held a hearing regarding the incident at which Petitioner stated: "I ain't got anything to do with that." (*Id.* at 7). Based on the findings of the investigation, the UDC referred the Incident Report to a Disciplinary Hearing Officer ("DHO") for further proceedings. (*Id.* at 5, 7).

On October 5, 2017, Petitioner received a Notice of Disciplinary Hearing Before the DHO. (ECF No. 9-1 at 9). Petitioner was informed that he was charged with violating Code No. 224, assault without serious injury. Petitioner signed a form acknowledging that he

had been advised of the rights he would have at the DHO hearing, including the right to call witnesses, present evidence, and have a staff member represent him. (*Id.* at 11). Petitioner indicated that he did not wish to have a staff representative present and did not wish to call witnesses. (ECF No. 9-1 at 9).

The hearing before the DHO was held on October 17, 2017. (*Id.* at 14). On December 5, 2017, William Sizemore, the DHO, prepared a written report detailing his findings. (*Id.* at 16). In the report, DHO Sizemore noted that, at the hearing, Petitioner stated: "I did not assault him. I live across from him. I do my own ceramic and leather work. If they want to call it an argument it was[;] I disagreed with him. He was not doing work for me. I bumped my hand on the locker." (*Id.* at 13). Notwithstanding these statements, DHO Sizemore found that Petitioner had committed the prohibited act of assaulting another person. (ECF No. 9-1 at 14). In reaching his decision, DHO Sizemore considered the Incident Report and SIS investigation, clinical encounters, photographs, a written statement from Petitioner, and two memoranda. (*Id.*). The memoranda included a statement prepared by a registered nurse at the prison, who described the injuries suffered by the victim, and a memorandum prepared by Mr. Broughton, a unit manager at FMC Lexington. (*Id.* at 15). Mr. Broughton's memorandum documented a search he conducted of Petitioner's locker after the assault, which yielded a pair of shorts with what appeared to be two drops of fresh blood on them. Mr. Broughton also discovered a washcloth at the foot of Petitioner's bed with what appeared to be smears of blood, and tissues in a nearby garbage can that were covered in a substance, which again appeared to be blood. (*Id.*).

DHO Sizemore determined that "the greater weight of the evidence supports the staff's claim" that Petitioner assaulted another inmate. (*Id.*). DHO Sizemore noted that

the victim had identified Petitioner as his assailant and that, while the victim had initially denied being attacked, it was common practice for an inmate to conceal the cause of injuries suffered during a fight, as inmates were wary of being branded an informant. (ECF No. 9-1 at 15). DHO Sizemore also noted that Mr. Broughton discovered evidence in his search consistent with the victim's allegations. (*Id.* at 15). DHO Sizemore imposed sanctions of 27 days of lost good conduct time, 15 days of disciplinary segregation, and a 6 months loss of commissary privileges. (*Id.*).

On January 11, 2018, Petitioner submitted a Regional Administrative Remedy Appeal, requesting that the result of the disciplinary hearing be overturned. (ECF No. 11 at 10). Petitioner asserted that the decision to impose sanctions was based on evidence not provided to him; specifically, the memorandum prepared by Mr. Broughton. (*Id.*). Petitioner explained that had he been aware of the statements contained in the memorandum, he would have called a witness to testify that the red stains found on his shorts came from a cherry dye that he used to color leather. (*Id.*).

On March 9, 2018, Angela P. Dunbar, Regional Director of the Mid-Atlantic Region of the Bureau of Prisons ("BOP") issued a response, informing Petitioner that his appeal had been denied. (*Id.* at 12). In denying Petitioner's appeal, the BOP found that "[a] review of the discipline record indicates the DHO did review and consider all the evidence presented at the hearing." (*Id.*). The order noted that the DHO's report "accurately and adequately" explained all the evidence relied on to find Petitioner guilty. The report further noted that DHO Sizemore was contacted and affirmed that all evidence described in the DHO report was reviewed at the disciplinary hearing. (*Id.*).

On April 4, 2018, Petitioner appealed the Regional Director's response to the Central Office, asserting that the decision should be overturned, because the DHO's

reliance on evidence, which was not shared with Petitioner, deprived him of his right to due process. (*Id.* at 13). The Central Office denied Petitioner's appeal on May 24, 2018, finding that the procedures employed by the DHO did not violate Petitioner's constitutional rights. (ECF No. 11 at 14).

Petitioner filed the instant § 2241 petition on June 22, 2018. (ECF No. 1). In the petition, he alleges that his due process rights under the Fifth and Fourteenth Amendments to the United States Constitution were violated by the BOP's disciplinary procedures. (*Id.* at 9). Petitioner contends that DHO Sizemore based his decision to sanction Petitioner, in part, on Mr. Broughton's memorandum; however, Petitioner was not made aware of the memorandum until after the disciplinary hearing. (*Id.*). Consequently, Petitioner was precluded from responding to the statements in the memorandum. Petitioner believes the BOP's failure to disclose all of its evidence prior to the hearing violates the rule announced in *Brady v. Maryland*, 373 U.S. 83 (1963). (*Id.*).

Respondent issued a Response to Petitioner's petition on July 23, 2018, arguing that the petition should be dismissed as Petitioner received all the due process rights to which he was entitled during the course of the disciplinary proceedings, and the disciplinary findings were supported by constitutionally sufficient evidence. (ECF No. 9 at 11-12). Respondent contends that Petitioner did not have a constitutional right to be given copies of all of the incriminating evidence prior to his hearing and that the Incident Report he was given gave him adequate notice of the charges and evidence to be used against him. (*Id.* at 9).

Respondent attached an affidavit from DHO Sizemore. (ECF No. 9-1 at 2). DHO Sizemore asserts that he discussed all of the documentary evidence with Petitioner at the hearing "and at no time did Petitioner ask me to stay the proceedings or object to the fact

that he had not been provided a copy of the documents prior to the hearing." (*Id.*). DHO Sizemore states that if Petitioner had objected to the documents presented to him, or asked for additional time to prepare a defense, DHO Sizemore would have recessed the hearing. (*Id.*).

Petitioner submitted a Response in Opposition to the Motion to Dismiss on August 1, 2018. (ECF No. 11). Petitioner argues that his petition should not be dismissed as the BOP violated his right to due process. Petitioner reiterates that had he known that Mr. Broughton's memorandum would be relied upon by DHO Sizemore, Petitioner would have presented evidence from a witness to refute the statements contained in the memorandum. (*Id.* at 1). Petitioner believes that the contents of this memorandum should have been disclosed to him prior to the hearing, so that he would have had a chance to prepare a proper defense. (*Id.* at 2). Petitioner also protests that the sanctions were imposed "based on another inmate's unfounded allegations." (*Id.* at 1).

## II.    **Standard of Review**

Respondent requests that this Court dismiss Petitioner's § 2241 petition, but does not discuss under what authority he brings the request. Because Respondent filed a Response concurrently with his motion to dismiss, the motion technically should be considered as one for judgment on the pleadings under Federal Rule of Civil Procedure 12(c). *See Walker v. Kelly*, 589 F.3d 127, 139 (4th Cir. 2009). However, the distinction makes no practical difference as the same standard of review applies to motions to dismiss under Rule 12(b)(6) and motions for judgment on the pleadings under Rule 12(c), and both motions may be filed in habeas actions. *Id.* at 138-39; *see also Martin v. U.S. Parole Comm'n*, No. CV PWG-17-3335, 2018 WL 2135009, at *1 (D. Md. May 9, 2018).

When deciding a motion for judgment on the pleadings, the court must accept all

well-pleaded allegations of the petition as true and "draw all reasonable factual inferences" in favor of the petitioner. *See Massey v. Ojaniit*, 759 F.3d 343, 353 (4th Cir. 2014); *Wolfe v. Johnson*, 565 F.3d 140, 169 (4th Cir. 2009). Nonetheless, the court is "not obliged to accept allegations that 'represent unwarranted inferences, unreasonable conclusions, or arguments,' or that 'contradict matters properly subject to judicial notice or by exhibit.'" *Massey*, 759 F.3d at 353 (quoting *Blankenship v. Manchin*, 471 F.3d 523, 529 (4th Cir. 2006)). A court presented with a motion for judgment on the pleadings in a federal habeas case must consider "the face of the petition and any attached exhibits." *Walker*, 589 F.3d at 139 (quoting *Wolfe*, 565 F.3d at 169) (internal markings omitted). In addition, the court may consider "matters of public record," including documents from prior or pending court proceedings, when resolving the motion, without converting it into a motion for summary judgment. *Id.* The Court "may also consider documents attached to the complaint ... as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic." *Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).

## III.  Discussion

### A.  Due Process Claim

The Due Process Clause of the Fourteenth Amendment to the United States Constitution ("Fourteenth Amendment") protects inmates from being deprived of life, liberty, or property without due process of law. *Wolff v. McDonnell,* 418 U.S. 539, 556 (1974). Petitioner has a constitutionally protected liberty interest in his good conduct time, as such time impacts the duration of his sentence. *See, e.g. Marino v. Masters*, No. 1:12-cv-00393, 2015 WL 66511, at *5 (S.D.W. Va. Jan. 5, 2015) (citing *Ponte v. Real,* 471 U.S. 491, 495 (1985)). Accordingly, when a federal prisoner is subject to a disciplinary

proceeding that may result in the loss of good conduct credit, the prisoner is guaranteed certain minimal requirements of procedural due process, including:

> (1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action.

*Superintendent, Massachusetts Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 454, (1985) (citing *Wolff,* 418 U.S., at 563–567). The DHO follows a procedure that incorporates these due process protections. *See* 28 C.F.R. § 541.8.

### i.) Brady violation

Petitioner challenges the fact that evidence used by DHO Sizemore was not disclosed to him prior to the hearing. (ECF No. 11 at 1). Petitioner asserts that this is a violation of the rule announced by the Supreme Court of the United States ("Supreme Court") in *Brady v. Maryland* 373 U.S. 83 (1963). (*Id.* at 1-2). In *Brady,* the Supreme Court held that, in criminal prosecutions, suppression of favorable evidence by the State violates the Due Process Clause of the Constitution. *See* 373 U.S. at 87. "To demonstrate a *Brady* violation, 'the proponent must show that the undisclosed evidence was (1) favorable to him either because it is exculpatory, or because it is impeaching; (2) material to the defense, *i.e.*, prejudice must have ensued; and (3) that the prosecution had materials and failed to disclose them.'" *United States v. Taylor*, 942 F.3d 205, 225 (4th Cir. 2019) (quoting *United States v. Wolf*, 860 F.3d 175, 189–90 (4th Cir. 2017)).

Although prisoners do retain rights under the Due Process Clause, prison disciplinary proceedings are not part of a criminal prosecution and the full array of rights due a defendant in such proceedings does not apply. *See Wolff*, 418 U.S. at 556. Particularly relevant to this action, the United States Court of Appeals for the Fourth

Circuit ("Fourth Circuit") previously rejected a plaintiff's "contention that the full panoply of criminal trial rights flowing from *Brady* and its progeny apply to prisoners in disciplinary settings," explaining that "*Brady's* broad disclosure requirements simply cannot be reconciled with the needs and exigencies of the institutional environment." *Wise v. Carpenter*, 838 F.2d 469 (4th Cir. 1988). The Fourth Circuit recently revisited this question, noting its decision in *Wise*, but failed to explicitly affirm or reject its holding, instead stating "we decline to decide whether *Brady* extends to prison disciplinary hearings." *Lennear v. Wilson*, 937 F.3d 257, 268 n.9 (4th Cir. 2019). While other circuits have reached differing conclusions regarding the applicability of *Brady's* disclosure requirements to prison disciplinary hearings,[1] courts in this circuit have generally continued to adhere to the Fourth Circuit's decision in *Wise*. *See Sullivan v. Bishop,* No. CIV.A. PWG-13-3129, 2014 WL 4182353, at \*6 (D. Md. Aug. 18, 2014) ("Following the only binding precedent on point, I find that due process does not require that *Brady*-type evidence be voluntarily provided to a prisoner in an adjustment hearing."); *see also Ray v. Caraway*, No. CIV.A. JFM-12-286, 2012 WL 3156832, at \*5 (D. Md. Aug. 2, 2012) (noting this circuit has held that *Brady* does not apply in prison disciplinary proceedings); *Blount v. Johnson*, No. CIV A 706CV00545, 2007 WL 1225993, at \*3 (W.D. Va. Apr. 24, 2007) (noting the circuit split on this issue and "question[ing] the validity of [*Brady's*] application in this context."); *Shaw v. Gillespie*, No. CV 9:19-1863-RBH-BM, 2019 WL 7285309, at \*3 (D.S.C. Aug. 20, 2019), *report and recommendation adopted*, No. 9:19-CV-01863-RBH, 2019 WL 5257954 (D.S.C. Oct. 17,

---

[1] *Compare Kenney v. Barron,* 239 F. App'x 494, 495 (11th Cir. 2007) ("We have never held that the principles of *Brady* extend to prison disciplinary hearings.."); *Godlock v. Fatkin*, 84 F. App'x 24, 3 (10th Cir.2003) (same), *with Piggie v. Cotton*, 344 F.3d 674, 678 (7th Cir.2003) (holding that "the rule of *Brady*, ... requiring the disclosure of material exculpatory evidence, applies to prison disciplinary proceedings.").

2019) ("[T]he Fourth Circuit has ruled there is no 'Brady-style right to exculpatory evidence' in prisoner adjustment hearings.") (quoting Wise, 838 F.2d 469).

Ultimately, it is unnecessary to determine whether the protections provided by Brady apply in this context, because the evidence which Petitioner asserts was improperly withheld—a memorandum describing a search which found incriminating items—was inculpatory, not exculpatory, making the protections created by Brady and its progeny inapplicable. See e.g. United States v. Bagley, 473 U.S. 667, 675 (1985) ("[T]he prosecutor is not required to deliver his entire file to defense counsel, but only to disclose evidence favorable to the accused that, if suppressed, would deprive the defendant of a fair trial.") (emphasis added). As the constitutional protections established by Brady simply do not apply to the facts underlying Petitioner's habeas petition, the undersigned **FINDS** that Petitioner's claim of a Brady violation should be dismissed.

ii.) Notice

While Petitioner's framing of his petition as asserting a violation of the rule announced in Brady is unavailing, his argument regarding the allegedly wrongful nondisclosure of the memorandum can be construed as an assertion that the prison failed to comply with the constitutionally mandated notice requirements applicable to prison disciplinary proceedings. Due process requires that prison officials give an accused inmate written notice of the charges against him at least twenty-four hours prior to conducting a disciplinary hearing. See Wolff, 418 U.S. at 564. The notice requirement is intended "to inform the inmate of what he is accused of doing so that he can prepare a defense to those charges and not be made to explain away vague charges set out in a misbehavior report." Sira v. Morton, 380 F.3d 57, 69 (2d Cir. 2004). To this end, to comply with the notice requirement, a prison must provide an inmate with "more than a

conclusory charge" and the inmate is entitled to "receive notice of at least some specific facts underlying the accusation." *Id.*

Respondent alleges that the Incident Report sufficiently notified Petitioner of the substance of all the inculpatory evidence possessed by the prison as any documents "not provided to [Petitioner] were summarized in the body of the Incident Report." (ECF No. 9 at 9). This statement is inaccurate as it relates to the Broughton memorandum. (ECF No. 1 at 9). The Incident Report did not contain any information about the search or the evidence discussed in the Broughton Memorandum. (ECF No. 9-1 at 20). Despite the absence of this information, however, the Incident Report still satisfied the notice requirements of due process.

Petitioner was provided with the Incident Report on September 30, 2017, more than two weeks before the disciplinary hearing. (ECF No. 1-1 at 1.) The Incident Report set out the date the alleged incident occurred, the charge against Petitioner, and the central facts implicating him. (ECF No. 1-1 at 1-2; ECF No. 9-1 at 5-7). Providing Petitioner with the date of the alleged offense and the nature of the offense alone was sufficient to satisfy the notice requirement. *See Coor v. Stansberry*, No. 3:08CV61, 2008 WL 8289490, at *2 (E.D. Va. Dec. 31, 2008) ("The notice here, which identified the charged offenses and the exact time when the offenses were alleged to have occurred, was more than sufficient to satisfy due process."). The Incident Report went further, however, and explained with specificity what Petitioner was accused of doing, and provided a "factual description of the basis for the disciplinary charges." *Davis v. O'Brien*, No. CIV.A. 7:08CV00200, 2008 WL 631172, at *3 (W.D. Va. Mar. 7, 2008). The prison was not required to exhaustively detail all inculpatory evidence pointing to Petitioner's guilt, but merely to provide sufficient factual detail so that Petitioner could be made aware of the

charge that was brought against him and could prepare a defense. *See Boyd v. O'Brien*, No. CIV. A. 7:08CV00289, 2008 WL 2074073, at \*7 (W.D. Va. May 14, 2008), *aff'd*, 301 F. App'x 292 (4th Cir. 2008) (noting that generally a "description of the incident in the Incident Report provides the inmate notice of the potential charges.") (citation omitted); *see also Pizzuti v. Baltazar,* No. 3:14-CV-00956, 2015 WL 224702, at \*7 (M.D. Pa. Jan. 15, 2015) ("While prisoners do have the right to present evidence to the DHO, the Supreme Court has never recognized a broader right to receive all discovery materials prior to a prison disciplinary hearing.") (internal citation omitted); *Sivak v. Cluney*, 977 F.2d 591 (9th Cir. 1992) (no requirement to disclose all evidence to inmate); *Phelps v. Vannatta*, 97 F. App'x 669, 672–73 (7th Cir. 2004) ("Because the form was not exculpatory, prison officials had no duty to disclose it to [the petitioner]."); *Lasko v. Holt*, 334 F. App'x 474, 476 (3d Cir. 2009) ("Notably absent from the *Wolff* list of due process rights is a prisoner's right to review all potentially inculpatory evidence prior to the disciplinary hearing..."); *Tuttle v. Semple*, No. 3:17-CV-01507 (JAM), 2018 WL 3637478, at \*5 (D. Conn. July 31, 2018) ("[A]n inmate facing a disciplinary hearing does not have a right to review all potentially inculpatory evidence prior to the disciplinary hearing.") (quotation omitted).

Accordingly, with respect to any claim by Petitioner that he was entitled to disclosure of the Broughton memorandum prior to the disciplinary hearing, the undersigned **FINDS** this argument to be without merit.[2]

---

[2] Petitioner also asserts that the failure to disclose the memorandum violated internal BOP policies. (ECF No. 11 at 2). Even if this is true, "the failure of prison officials to follow their own internal policies, procedures or regulations alone is insufficient to make out a due process violation when a protected liberty interest is evident as long as the constitutionally required minimum is met." *Allen v. Young*, No. CV 5:18-01306, 2019 WL 6843664, at \*6 (S.D.W. Va. June 26, 2019), *report and recommendation adopted*, No. 5:18-CV-1306, 2019 WL 6859631 (S.D.W. Va. Dec. 16, 2019).

*iii.) Failure of the DHO to disclose the memorandum during the hearing*

In addition to his claim asserting a *Brady*-like failure to disclose the evidence prior to the hearing, Petitioner also asserts that DHO Sizemore failed to inform him about the existence of Mr. Broughton's memorandum during the hearing itself. Petitioner states that he first learned of the existence of the memorandum when he was delivered DHO Sizemore's written reasons for imposing disciplinary sanctions. (ECF Nos. 1 at 9; 11 at 3). Petitioner asserts that had he been made aware of the memorandum prior to or during the hearing, he would have called a witness whose testimony would have "disputed Mr. Broughton's Theory." (ECF No. 11 at 1). Petitioner does not elaborate in his filings on the substance of the anticipated testimony, but in attachments to the habeas petition that document Petitioner's appeal of DHO Sizemore's decision, Petitioner asserts that his witness would have provided an alternative explanation for the red stains discovered on Petitioner's personal effects following the attack; specifically, that they came from a red dye substance that Petitioner used in dyeing leather. (ECF No. 11 at 10). Petitioner submitted a verified habeas petition in which he declared, under penalty of perjury, that the information contained in his petition was true and correct. (ECF No. 1 at 8). Accordingly, Petitioner's verified petition should be treated as "'the equivalent of an opposing affidavit'" for the purpose of assessing the motion for judgment on the pleadings. *Greene v. Feaster*, 733 F. App'x 80, 81 (4th Cir. 2018) (quoting *World Fuel Servs. Trading, DMCC v. Hebei Prince Shipping Co.*, 783 F.3d 507, 516 (4th Cir. 2015)).

Respondent asserts that Petitioner's contention that he was not made aware of Mr. Broughton's memorandum at the hearing is inaccurate and contradicted by the record. (ECF No. 9 at 10). Respondent attaches an affidavit prepared by DHO Sizemore, confirming that he "discussed the documentary evidence with Petitioner during hearing

and at no time did Petitioner ask me to stay the proceedings or object to the fact that he had not been provided a copy of the documents prior to the hearing." (ECF No. 9-1 at 2). DHO Sizemore further states that had Petitioner objected, or asked for additional time to prepare a defense, this request would have been granted. (*Id.*).

Consequently, the factual issue of when Petitioner learned of the Broughton memorandum is a matter of dispute, as the evidence includes opposing sworn statements made by the parties. Unfortunately, the DHO's Report does not clearly and unequivocally answer the question. While the Report mentions the Broughton memorandum, it does not explicitly state that the memorandum was given to Petitioner at the hearing.

Nevertheless, whether Petitioner received the memorandum at the hearing or after the hearing is immaterial, because the failure to present every piece of inculpatory evidence at or before the hearing is not a violation of due process. Here, Petitioner received all of the procedural protections established by *Wolff* as necessary to comply with the minimal due process protections afforded to prisoners in disciplinary hearings. *See* 418 U.S. at 564-71. He received advance written notice of the charges on September 30, 2017 in the form of the Incident Report. (ECF No. 9-1 at 5). He was present at a hearing where the DHO informed him of the charges against him and gave him a chance to call witnesses and present documentary evidence in his defense. (*Id.* at 13). Petitioner was then provided with a written report, which outlined the evidence considered and the reasons for the disciplinary action taken. (*Id.*). The fact that one of the pieces of evidence mentioned was not specifically presented at the hearing did not unduly interfere with any of the procedural rights afforded to Petitioner by the Constitution.

Petitioner does not assert that DHO Sizemore wrongfully refused to grant him access to relevant exculpatory evidence he requested; instead, he objects to not having

access to all the *inculpatory* evidence so that he could challenge its validity. The undersigned has found no precedent in this circuit which holds that a DHO's failure to allow an inmate to confront and dispute every piece of inculpatory evidence amounts to a violation of due process.[3] Instead, courts that have considered the issue have held that the omission of a piece of inculpatory evidence at the hearing does not violate the constitutionally mandated procedural due process protections established by *Wolff. See McMahon v. Tamez*, 409 F. App'x 752, 753 (5th Cir. 2011) (inmate's due process rights not violated despite his complaint that he was not aware of memoranda and other evidence until after he read the DHO's report); *Sivak v. Cluney*, 977 F.2d 591 (9th Cir. 1992) ("[T]he [*Wolff*] Court did not impose the requirement that prison officials disclose to the [inmate] all of the evidence against him."); *Rasheed-Bey v. Duckworth*, 969 F.2d 357, 361 (7th Cir. 1992) ("Inmates have no right to confront and cross examine adverse witnesses; thus, a disciplinary board's decision is not limited to evidence presented at the hearing."); *Quick v. Drew*, No. CIV.A. 5:11-2059-GRA, 2012 WL 3000672, at *5 (D.S.C. June 25, 2012), *report and recommendation adopted*, No. 5:11-CV-02059-GRA, 2012 WL 3000598 (D.S.C. July 23, 2012) ("Given that a DHO can rely on the statements of adverse witnesses without [the petitioner's] cross-examination or confrontation, it follows that a DHO officer can similarly rely on the statements of a staff member regarding his review of potentially exculpatory videotape evidence."); *Sanders v. Hobbs*, 773 F.3d 186, 191 n.2 (8th Cir. 2014) (noting the inmate's claim that he was not given notice of or permitted to review some evidence at the hearing, but dismissing claim);

---

[3] The Fourth Circuit recently considered the extent of prisoners' right to access exculpatory evidence in *Lennear v. Wilson*, 937 F.3d 257 (4th Cir. 2019). However, that case is dissimilar to the instant action as the *Lennear* court was confronted with an inmate who was denied access to specifically requested *exculpatory* videotape evidence, which assertedly could have entirely disproven, or significantly weakened, the core claim against him. *See id.* at 269.

16

*Nelms v. Young*, No. CIV.A. 07-1661, 2009 WL 1160682, at *11 (W.D. La. Apr. 29, 2009) ("Moreover, while it has been recognized that material exculpatory evidence in prison disciplinary proceedings should be disclosed, the documentation allegedly withheld in this case cannot arguably constitute material exculpatory evidence."); *Ware v. Warden, FCI Beaumont*, No. 1:14-CV-495, 2015 WL 9946408, at *3 (E.D. Tex. Nov. 5, 2015), *report and recommendation adopted*, No. 1:14-CV-495, 2016 WL 375247 (E.D. Tex. Feb. 1, 2016) ("Petitioner is not entitled to relief on this ground because withholding memorandums or other documents in a disciplinary proceeding does not implicate an inmate's due process rights."); *Gormsen v. Snyder-Norris*, No. 15-CV-85-HRW, 2016 WL 1271026, at *6 (E.D. Ky. Mar. 29, 2016) ("In fact, a prison official may amplify his or her reasons for ruling against an inmate after the disciplinary hearing has ended."); *Mitchell v. Zych*, No. 2:09-CV-12551, 2009 WL 3497796, at *4 (E.D. Mich. Oct. 28, 2009) ("[T]his Court has been unable to find any authority which requires a prison disciplinary hearing officer to disclose his reasons for finding an inmate guilty at the conclusion of the hearing, so as to afford that inmate an additional opportunity to present additional evidence after the hearing has concluded."); *Phelps v. Vannatta*, 97 F. App'x 669, 673 (7th Cir. 2004) (prison officials' decision to not provide the petitioner with documents used to assess his guilt did not violate due process as the documents were inculpatory, not exculpatory); *Brown v. Scibana*, No. CIV-07-0771-F, 2008 WL 185780, at *5 (W.D. Okla. Jan. 18, 2008) (same); *Smith v. Johnson*, No. 2:17-CV-1138, 2018 WL 1990272, at *2 (W.D. La. Apr. 9, 2018), *report and recommendation adopted*, No. 17-CV-1138, 2018 WL 1972541 (W.D. La. Apr. 25, 2018), *aff'd*, 774 F. App'x 256 (5th Cir. 2019) (no due process violation despite inmate's claim that failure to disclose some evidence used to assess his guilt hindered his ability to present a defense); *Cipriano v. Fed. Bureau of Prisons*, No. CV 17-377WES, 2017

17

WL 6942439, at *6 (D.R.I. Dec. 6, 2017), *report and recommendation adopted*, No. CV 17-377 WES, 2018 WL 400768 (D.R.I. Jan. 12, 2018) (denying the petitioner's "claim that he was denied access to a document considered by the DHO" as, assuming it were true, this would not result in a due process violation). The conclusion, reached by courts that considered the question, that there is no specific right to be presented with every piece of inculpatory evidence that may potentially be considered by the hearing officer is consistent with the Supreme Court's holding in *Wolff* that, while inmates have the right to present a defense, they do not have the specific right of confrontation or cross-examination in prison disciplinary proceedings. *Id.* at 567-78.

This is not to say that prison officials are free to withhold *all* inculpatory evidence from the inmate. In order to honor the "the inmate's due process right to 'marshal facts in his defense and present witnesses and documentary evidence at the hearing,'" the inmate clearly must have some idea of the factual basis of the charge, and some opportunity to refute the evidence arrayed against him. *Lennear*, 937 F.3d at 269 (quoting *Gibbons v. Higgins*, 73 F.3d 364, 364 (7th Cir. 1995)). In cases where the failure to disclose inculpatory documentary evidence operates to "deprive[] [an inmate] of any opportunity to explain or challenge" the case against him, the inmate's right to present a defense may be unconstitutionally impaired. *See Sira v. Morton*, 380 F.3d 57, 75 (2d Cir. 2004); *see also Francis v. Coughlin*, 891 F.2d 43, 47 (2d Cir. 1989) (noting that *Wolff* did not speak to an inmate's right to be informed of adverse evidence *during* the disciplinary hearing, but holding that, nevertheless, the inmate had a  limited version of this right.).

"Procedural errors in disciplinary proceedings are subject to harmless error review." *Lennear,* 937 F.3d at 276. An error is harmless "when it does not prejudice an inmate's preparation or defense at a hearing." *Id.* (citations omitted). It is clear in this

case that Petitioner's right to present evidence in his defense was not harmed or impaired by DHO Sizemore's failure—assuming that such a failure occurred—to specifically inform Petitioner of Mr. Broughton's memorandum. The key evidence against Petitioner was the victim's identification of Petitioner as the assailant, both in the immediate aftermath of the assault and later in a photo-array, as well as the injuries on Petitioner's hand, which were consistent with the victim's story. This evidence was provided to Petitioner in the Incident Report and formed the basis of the UDC's recommendation that the charge against Petitioner proceed to the DHO for further consideration. (ECF No. 9-1 at 5).

At most, the failure to specifically inform Petitioner at the hearing of the Broughton memorandum deprived Petitioner of the ability to mitigate the incriminating nature of a secondary piece of inculpatory evidence. Mr. Broughton's memorandum was not especially probative of Petitioner's guilt, especially when the record reflects that DHO Sizemore was aware of an innocent reason for blood to be on Petitioner's effects. DHO Sizemore was told by Petitioner at the hearing that he injured his hand when he bumped it against his locker, which plausibly caused him to bleed on his shorts and to use a washcloth and paper towels to tend to his injury. Even if Petitioner had a different explanation for the red stains on his shorts and washcloth, this evidence would not have exonerated Petitioner, or called into question the victim's identification. In other words, receiving Mr. Broughton's memorandum would not have *aided* Petitioner in establishing that he was innocent of the assault.

The undersigned, accordingly, **FINDS** that in the circumstances presented by this case, the failure of the DHO to specifically inform Petitioner at the hearing of all the inculpatory evidence the DHO might consider did not amount to a violation of procedural due process, or, at worst, was harmless error.

### B. Sufficiency of the Evidence

While Petitioner largely frames his objection to the disciplinary proceedings as stemming from the alleged failure to provide him with the Broughton memorandum, he also asserts that the sanctions were based on "unfounded allegations," and appears to raise a challenge to the sufficiency of the evidence used to convict him. (ECF No. 11 at 3). The Supreme Court has held that "requirements of due process are satisfied if some evidence supports the decision by the prison disciplinary board to revoke good time credits." *Superintendent, Massachusetts Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 455 (1985). The Fourth Circuit recently considered this standard and clarified that the requirement there be "some evidence" in the record to support the DHO's findings is "an exceedingly lenient standard, requiring only 'a modicum of evidence' in order 'to prevent arbitrary deprivations without threatening institutional interests or imposing undue administrative burdens.'" *Tyler v. Hooks*, 945 F.3d 159, 170 (4th Cir. 2019) (quoting *Hill*, 472 U.S. at 455). In *Tyler,* the Fourth Circuit held that in order to sustain a punishment imposed pursuant to a prison disciplinary hearing, the State "need only point to 'some evidence' in the record—even if it is merely circumstantial—that [the prisoner] was guilty of the charged disciplinary offense." *Id.* at 171. The Fourth Circuit further found that the lack of any probative evidence in the record beyond conclusory statements of guilt meant the prison failed to clear even this lenient standard, but admonished that "this is the very rare case where federal habeas relief will be available due to a total absence of evidence in the record..." *Id.* at 173.

In light of the Fourth Circuit's recent guidance on this standard and clear directive that a DHO's conclusion should be upheld if it is supported by even a "modicum" of probative evidence, it is clear that DHO Sizemore's finding in this case meets the

constitutional minimum. Even discounting the contested memorandum provided by Mr. Broughton, there still existed "some evidence" sufficient to support DHO Sizemore's finding. This does not present the "very rare case" where the conclusion of the DHO must be overturned due to "a total absence of evidence in the record" to support the institution's finding. *Tyler*, 945 F.3d at 173. The Fourth Circuit has previously upheld an inmate's conviction for possessing escape tools based upon the unsworn statement of an anonymous informant, where the only additional evidence was that escape tools were found in the prison, and the inmate had previously escaped from a different prison. *See Baker v. Lyles*, 904 F.2d 925, 933 (4th Cir. 1990); *see also Payne v. Craig*, No. CIV.A. 5:08-0989, 2011 WL 4021321, at *3 n.3 (S.D.W. Va. June 30, 2011), *report and recommendation adopted*, No. 5:08-CV-00989, 2011 WL 4021320 (S.D.W. Va. Sept. 9, 2011) (upholding sanctions for fighting based on statement of other involved inmate and injuries consistent with the inmate's assertions); *Graham v. Warden of FCI-Cumberland*, No. GJH-16-2895, 2017 WL 4217105, at *5 (D. Md. Sept. 20, 2017) (upholding DHO finding based on account of inmates that the petitioner engaged in a fight).

Here, DHO Sizemore credited the victim's identification of Petitioner as the assailant over Petitioner's denial. A reviewing court is "precluded from making independent credibility assessments or reweighing the evidence" when considering whether a DHO's findings are constitutionally sufficient to survive due process. *See Solano-Moreta v. Stephens*, 536 F. App'x 314 (4th Cir. 2013) (unpublished); *see also Smith v. Masters*, No. 1:15-CV-11533, 2017 WL 1064032, at *4 (S.D.W. Va. Feb. 16, 2017), *report and recommendation adopted sub nom. Smith v. Romero*, No. CV 1:15-11533, 2017 WL 1058988 (S.D.W. Va. Mar. 20, 2017) ("[i]t is not the province of this Court to weigh the evidence and independently assess the credibility of the employee and

Petitioner."). DHO Sizemore's findings were supported by "some evidence" and thus the proceedings comported with due process. Accordingly, to the extent that Petitioner challenges the result of his disciplinary sanctions as based on insufficient evidence, the undersigned **FINDS** that this claim is without merit.

## IV.    <u>Proposal and Recommendations</u>

For the aforementioned reasons, the undersigned respectfully **PROPOSES** that the District Court confirm and accept the foregoing findings and **RECOMMENDS** that Petitioner's Petition for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241, (ECF No. 1), be **DENIED;** that Respondent's request for summary judgment, (ECF No. 9), be **GRANTED;** and that this action be **DISMISSED,** with prejudice, and removed from the docket of the court.

The parties are notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable Frank W. Volk, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, Petitioner shall have fourteen days (filing of objections) and three days (if received by mail) from the date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown. Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States*

*v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing party, Judge Volk, and Magistrate Judge Eifert.

The Clerk is instructed to provide a copy of this "Proposed Findings and Recommendations" to the Petitioner and to counsel of record.

**FILED:** February 7, 2020

Cheryl A. Eifert
United States Magistrate Judge

23